In the Matter of MULTIPLE SCLEROSIS SERVICE ORGANIZATION OF NEW YORK, INC., et al., Respondents. NEW YORK CITY CHAPTER OF THE NATIONAL MULTIPLE SCLEROSIS SOCIETY et al., Appellants.

Second Department, April 8, 1985

#### APPEARANCES OF COUNSEL

*Simpson Thacher & Bartlett* (*Michael J. Chepiga* of counsel), and *Timothy V. Smith, P. C.,* for New York City Chapter of the National Multiple Sclerosis Society, appellant. (One brief filed.)

*Robert Abrams, Attorney-General* (*Daniel L. Kurtz, Joel Graber* and *Charles Brody* of counsel), appellant *pro se.*

*Mayrose Friedman* for Multiple Sclerosis Service Organization of New York, Inc., respondent. *Kramer, Levin, Nessen, Kamin & Frankel* (*Steven E. Greenbaum* of counsel), for Blueberry Treatment Centers, Inc., respondent. *Abraham S. Wilk* for Adult Retardates Center, Inc., respondent. *Richards, O'Neill & Allegaert,* for Vacations & Community Services for the Blind, Inc., respondent. (One brief filed.)

#### OPINION OF THE COURT

TITONE, J. P.

This is a proceeding brought by the Multiple Sclerosis Service Organization of New York, Inc. (MSSO), a not-for-profit corpora-

tion which provides on-site services to victims of multiple sclerosis, for judicial approval of its plan to distribute its assets on dissolution. Special Term, in essence, approved the plan of distribution and denied the request of the Attorney-General for a hearing. We hold that a corporation formed for the purpose of serving multiple sclerosis sufferers cannot distribute its assets on dissolution to organizations having no nexus with multiple sclerosis and, therefore, reverse and remit for further proceedings.

MSSO provided services to multiple sclerosis patients through a recreational center located in Brooklyn. Its operations were funded by donations and bequests received from various sources as well as through numerous fund raising activities.

In 1982, MSSO determined that it could no longer continue operations and resolved to sell its only tangible asset, the recreational center, and dissolve. Judicial permission for such sale was granted, in accordance with Not-For-Profit Corporation Law § 511, following notice to the Attorney-General.

On January 10, 1983, MSSO resolved to distribute its assets, after payment of debts and expenses, among four charities. It appears that none of the four charities provides services to multiple sclerosis patients. In seeking judicial approval of its plan, MSSO refused to consent to a distribution to the National Multiple Sclerosis Society (New York City Chapter), stating that it would be "inappropriate" because that society and its New York affiliate "primarily emphasized research rather than service activities".

The Attorney-General raised an affirmative defense, objecting to the plan of dissolution on the ground that it failed to comport with the statutory requirement that assets be distributed to organizations with "substantially similar" purposes on dissolution (Not-For-Profit Corporation Law § 1005 [a] [3] [A]), and sought a hearing. In addition, the National Multiple Sclerosis Society and its New York City Chapter sought to intervene, urging that the New York City Chapter provided the same types of services to multiple sclerosis patients and, indeed, to some of the same individuals as had MSSO during its existence. By stipulation, all interested parties were permitted to intervene.

MSSO sought to strike the Attorney-General's affirmative defense and the New York City Chapter's answer. Special Term granted the motion, holding that the four charities designated by MSSO were providing "services to permanently disabled people" and that since such activities were "substantially similar" to those of MSSO, there was nothing "improper" with

MSSO's selection procedures or its plan of distribution. The Attorney-General and the New York City Chapter have appealed.

Petitioner is defined as a type B not-for-profit corporation. According to the relevant statutory provision, assets of such corporations, upon dissolution, are to be "distributed to one or more domestic or foreign corporations or other organizations engaged in activities substantially similar to those of the dissolved corporation" (Not-For-Profit Corporation Law § 1005 [a] [3] [A]). This "substantially similar" requirement, according to the legislative history, "is a codification of the 'cy-pres' doctrine" (Memorandum of Joint Legislative Committee to Study Revision of Corporation Laws, 1969 NY Legis Ann, at 139; *see, Matter of Goehringer,* 69 Misc 2d 145), an approach consistent with prior decisional law which had uniformly applied the doctrine of corporate cy pres in distributing the assets of dissolving charities (*see, e.g., Matter of Richmond County Socy. for Prevention of Cruelty to Children [Staten Is. Mental Health Socy. — Children's Aid Socy.],* 11 AD2d 236, *affd* 9 NY2d 913, *cert denied* 368 US 290; *Matter of Bowne,* 11 Misc 2d 597; *Matter of Scott,* 1 Misc 2d 206).

Under cy pres, the assets of a dissolving charitable corporation must be distributed to other charitable corporations which perform activities " 'as near as possible' " to those of the dissolving corporation (Bogert, Trusts and Trustees § 431 [2d ed rev]; *see, Matter of Richmond County Socy. for Prevention of Cruelty to Children [Staten Is. Mental Health Socy. — Children's Aid Socy.], supra; cf. Sherman v Richmond Hose Co.,* 230 NY 462; *Matter of Walter,* 150 Misc 512). This approach accords with the presumed intent of those who have made gifts to a charitable organization. After all, donors must be presumed to intend to promote the purposes of the charity that is the recipient of their generosity (*cf. St. Joseph's Hosp. v Bennett,* 281 NY 115; *Owens v Missionary Socy. of M.E. Church,* 14 NY 380, 386).

The record before us contains poignant evidence that donors to MSSO specifically intended to benefit victims of multiple sclerosis. In fact, it appears that the bulk of the donations MSSO received came from such victims, their relatives and friends. It is, at the very least, highly inequitable to distribute such funds to charitable organizations which will benefit persons other than victims of multiple sclerosis, no matter how worthy the other causes may be.

Where, as here, a proposed plan of dissolution is vigorously contested on the facts, summary disposition is inappropriate and

a factual hearing must be directed at which all potential donees may present such relevant and material evidence on the issue of the disposition of the dissolving charity's assets (*cf. Matter of Richmond County Socy. for Prevention of Cruelty to Children* [*Staten Is. Mental Health Socy. — Children's Aid Socy.*], 11 AD2d 236, *affd* 9 NY2d 913, *cert denied* 368 US 290, *supra; Matter of Italian Benevolent Inst.*, 157 NYS2d 485, *mod on other grounds* 5 AD2d 816). There are at least two organizations that engage in "substantially similar" activities as MSSO — the National Society and the New York City Chapter. The Attorney-General advises that there may be others. Though it seems doubtful on the basis of the present state of the record, perhaps the four organizations designated by MSSO can establish that they meet the "substantially similar" statutory criteria. All these matters are best explored at an evidentiary hearing.

For these reasons, the order should be reversed, on the law and the facts, without costs or disbursements, and the matter remitted to the Supreme Court, Kings County, for an evidentiary hearing and further proceedings consistent with this opinion.

THOMPSON, O'CONNOR and RUBIN, JJ., concur.

Order of the Supreme Court, Kings County, dated May 11, 1984, reversed, on the law and the facts, without costs or disbursements, and matter remitted to the Supreme Court, Kings County, for an evidentiary hearing and further proceedings consistent with the opinion herewith.